**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**IN ADMIRALTY**

**ION INSURANCE COMPANY, INC.,**

**Plaintiff,**

**Case No.:**

**v.**

**ANGEL GARCEL and CB MARINE TOWING AND SALVAVE, INC. D/B/A SEA TOW MIAMI,**

**Defendants.**

______________________________________/

## COMPLAINT FOR DECLARATORY JUDGMENT ON MARITIME INSURANCE CONTRACT

Pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and Rule 9(h) of the Federal Rules of Civil Procedure, Plaintiff, ION Insurance Company, Inc. ("ION"), hereby seeks declaratory judgment against Defendants, Angel Garcel ("Garcel") and CB Marine Towing and Salvage, Inc. d/b/a Sea Tow Miami ("Sea Tow") for the purpose of determining a question of actual, immediate controversy among the parties.

## JURISDICTION AND VENUE

1. This is an admiralty and maritime cause of action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, because this claim arises out of a dispute over contracts of marine insurance and accordingly falls within the Court's admiralty and maritime jurisdiction.

2. Venue is proper United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the action occurred within this District

**THE PARTIES**

3. At all times material, ION was, and still is, a foreign corporation organized and existing under the laws of the American Samoa with its principal place of business in Prairieville, Louisiana. ION is eligible to transact insurance business in the State of Florida pursuant to the Florida Surplus Lines Law, § 626.913, Fla. Stat., et seq.

4. At all material times, Garcel was the Named Insured under marine insurance policies ION issued for the assured vessel, M/Y NIRVANA ("the Vessel"), which had been moored at 3218 NW North River Dr., Florida 33142 in Miami-Dade County, Florida.

5. At all material times, Sea Tow was, and still is, a Florida Profit Corporation, duly authorized and licensed to do business in the State of Florida with a principal place of business in Miami-Dade County, Florida.

**NATURE OF THE CLAIM**

6. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of construing and interpreting the terms of a marine insurance contract and for a determination of the rights and obligations, if any, of the parties arising from the marine insurance contract, including ION's right to rescind the contract.

7. There is an actual, present, and existing controversy among the parties to this lawsuit regarding whether there exists coverage to Garcel under a marine insurance contract, the rights and obligations, if any, of the parties arising under the marine insurance contract, and ION's right to rescind the contract.

8. All conditions precedent to filing this action have been performed or have been waived.

**THE INSURANCE POLICIES**

9. ION issued two marine insurance policies to Garcel, both bearing Policy No. EW1011960, for the policy periods of January 19, 2024 to January 18, 2025 (the "2024 Policy") and January 18, 2025 to March 30, 2025 (the "2025 Renewal Policy") (collectively, the "Policies"). Copies of the Policies are attached hereto as **Composite Exhibit "1."**

**FACTS**

10. Garcel signed and submitted a Marine Insurance Proposal Form on January 16, 2024 to obtain the 2024 Policy for the Vessel (the "2024 Proposal"). A copy of the 2024 Proposal is attached hereto as **Exhibit "2."**

11. The 2024 Proposal includes the following relevant questions to and responses from Garcel: "Have you or any person who may use this vessel with your permission ever had: -

a. Ever been charged with or convicted of any offense involving dishonesty: No.

b. Is the vessel the subject of any mortgage or financial agreement: No.

c. Are you the sole owner of the vessel: Yes."

*See* Ex. 2.

12. The 2024 Proposal states, in relevant part:

> I hereby declare that all the information I have given on the proposal form is correct at the time of signing and that I understand I will be obliged to inform Insurers of any changes that occur during the policy period and that failure to do so could invalidate this contract of insurance. I also declare that if anything on this form was written by another person he/she acted as my agent for this purpose. Signing below does not bind the proposer to complete this insurance. The Company reserves the right to decline any proposal.

*Id.*

13. Garcel signed and submitted a Declaration form on January 16, 2024 to obtain the 2024 Policy for the Vessel (the "2024 Declaration"). A copy of the 2024 Declaration is attached hereto as **Exhibit "3."**

14. The 2024 Declaration includes the following relevant questions to and responses from Garcel:

a. Have you ever been charged with or convicted of any offense involving dishonest? No.

b. Are you the sole owner of the vessel? Yes.

c. Is the vessel the subject of any mortgage or financial agreement? No.

*See* Ex. 3.

15. The 2024 Declaration states, in relevant part:

> I hereby declare that all the information that I have given on the proposal form is correct at the time of signing and that I understand I would be obliged to inform insurers of any changes that occur during the policy period and that failure to do so could invalidate this contract of insurance. I also declare that if anything on this form was written by another person he/she acted as my agent for this purpose.

*Id.*

16. Garcel signed and submitted a Named Operator Resume on January 16, 2024 to obtain the 2024 Policy for the Vessel (the "2024 Named Operator Form"). Garcel signed and submitted a Named Operator Form on February 14, 2025 to obtain the 2025 Renewal Policy (the "2025 Named Operator Form"). Copies of the 2024 Named Operator Form and 2025 Named Operator Form are attached hereto as **Composite Exhibit "4."**

17. The 2024 Named Operator Form and 2025 Named Operator Form include the following relevant question to and response from Garcel:

> a. Have you ever been charged with or convicted of any criminal offence, felony or misdemanour [sic.] and/or any other offence which might affect our assessment of the risk? No.

*See* Ex. 4.

18. The 2024 Named Operator Form and 2025 Named Operator Form include the following declaration:

> To the best of my knowledge and belief the information provided in connection with this resume, whether in my own hand or not, is true and I have not withheld any material facts*. I understand that non-disclosure or misrepresentation of any material fact* may entitle underwriters to void the insurance.
>
> *A material fact is one likely to influence acceptance or assessment of this proposal by underwriters and/or the terms of insurance offered and/or agreed.; if you are in any doubt as to whether a fact is material or not you must disclose it.
>
> This resume and the information provided in connection therewith contain statements upon which underwriters will rely in deciding to accept this insurance and/or the terms upon which this insurance may be offered and/or agreed.

*Id.*

19. Garcel signed and submitted a Fraud Statement Acknowledgement Form on January 16, 2024 to obtain the 2024 Policy (the "2024 Fraud Statement"). Garcel signed and submitted a Fraud Statement Acknowledgement Form on February 14, 2025 to obtain the 2025 Renewal Policy (the "2025 Fraud Statement"). Copies of the 2024 Fraud Statement and the 2025 Fraud Statement are attached hereto as **Composite Exhibit "5."**

20. The 2024 Fraud Statement and 2025 Fraud Statement state, in relevant part:

> I Angel Garcel, Policy/Quotation Number EQ1020780 [2024 Fraud Statement] Policy/Quotation Number EW1011960 [2025 Fraud Statement], hereby understand that the information I have provided is material to the underwriting of my insurance policy. This information includes, but is not limited to:
>
> - Information provided on my application/proposal form.
>
> . . .

> - The operators of the vessel and the waters in which they will navigate.
>
> . . .
>
> - Responses to underwriting questions and requests for information.
>
> . . .
>
> This information determines the coverages, premiums, deductibles, and all terms and conditions offered on behalf of the insuring company and its underwriters. It is understood that any misrepresentation, intentional omission. . . I have presented, may result in a declination of coverage in the event of a claim.
>
> **Applicable in Florida**
> Any person who knowingly and with the intent to Damage, Defraud, or Deceive any Insurance Company files a Statement of Claim containing any False, Incomplete or Misleading Information is Guilty of a Felony of the third degree. [2024 Fraud Statement]
>
> **FLORIDA** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony in the third degree. [2025 Frad Statement]

*See* Ex. 5

21. In reliance on the representations made by Garcel in the aforementioned underwriting documents, ION issued the Policies, subject to the terms, conditions, and exclusions therein.

22. On March 7, 2025, Garcel submitted a Motorboat and Yacht Claim Form, reporting a claim under the 2025 Renewal Policy for a fire set to the Vessel (the "Underlying Claim").

23. ION thereafter commenced its investigation of the Underlying Claim and alleges the following, upon information and belief, in light of the information learned in the course of that investigation.

24. On or about March 16, 2025, Sea Tow commenced wreck removal activities under a fixed-fee contract for the Vessel, as formalized in the U.S. Open Form Salvage Agreement

purportedly executed by Garcel on March 7, 2025. ION is not a signatory to the U.S. Open Form Salvage Agreement.

25. The Vessel was removed from the site for demolition on April 24, 2025.

26. Sea Tow submitted an invoice for $385,395.48/and a fixed-fee wreck removal claim in the amount of $525,000 for the Vessel for the Salve Team encompassing: (1) pollution emergency response conducted under time-and-material billing during the initial submerged phase; (2) containment and cleanup operations performed throughout both the emergency and wreck removal phases, including boom deployment, sorbent replacement, and environmental monitoring; (3) equipment, labor, and disposal expenses incurred across both phases; and (4) fixed-fee wreck removal services, inclusive of continued pollution control measures performed in furtherance of the Garcel's environmental obligations.

27. Through its investigation, ION learned since at least the summer of 2022, Garcel has been involved in civil litigation filed against Garcel disputing his ownership of the Vessel, with that ownership dispute allegedly rising to violent levels. Neither the ownership dispute nor the alleged violence associated therewith were disclosed to ION at any time.

28. Through its investigation, ION learned that in addition to misrepresentations and/or omissions in the applications documents outlined above, Garcel omitted the following litigation matters filed against him, and relevant allegations regarding the ownership of the Vessel:

a. *Nimbus Boat Rental, Corp., Christian Valdes and Elaine Leyva v. Angel Garcel and Jet Skis in Miami, Corp.*, Case No. 2022-013798-CA-01, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (filed July 27, 2022), wherein the Plaintiffs alleged in relevant part as follows:

i. Through breaches of a confidential relationship as discussed more fully herein and criminal conduct, the Defendants have jointly, severally and in concert with each other have converted the vessel. These proceeds are intended to recover possession of the Nirvana to the Plaintiffs. *See* introduction paragraph of Plaintiffs' Complaint, Filing #154157435.

ii. Valdes and Leyva advanced and paid all of the funds necessary to acquire the vessel and the appurtenant furnishings. Valdes and Leyva solely were responsible for compiling approximately $635,000.00 dollars for the purchase of the vessel and the funds for furnishings and equipment appurtenant thereto to make the vessel safe and seaworthy for the charter business. *Id.* at ¶ 33.

iii. At the time of the closing, Garcel advised Valdes and Leyva that he, in his individual capacity and in his course and scope as agent for Jet Ski, would take care of the registration of the vessel and all perfunctory paperwork. Lacking any experience in these types of transactions, Vales and Leyva had no objection to this and trusted that the vessel would be properly documented in light of the understanding the parties had. *Id.* at ¶ 34.

iv. Garcel registered the vessel in the name of his closely held entity: Jet Skis. Such registration into the name of the entity was part of a scheme by Garcel to exercise unlawful dominion or control over the Nirvana. *Id.* at ¶ 36.

v. Garcel and Jet Skis never procured or tendered any of the funds for the purchase of the Nirvana or its improvements at the time of the purchase or at any time thereafter, ever. *Id.* at ¶ 37.

vi. Valdes learned through material witnesses that Garcel's plan all along was to fraudulently scheme and trick Valdes and Leyva so that he could become and remain the owner of the Nirvana. *Id.* at ¶ 72.

vii. Valdes and Leyva have learned that Garcel is in possession of and has wrongfully detained the vessel, has and continues to exercise dominion and control over the vessel and is generating revenue by and through the charter of the Nirvana. He is doing so without the consent and authorization of Valdes and Leyva and has not accounted to Valdes and Layva for any of the funds generated unlawfully by Garcel. *Id.* at ¶ 73.

b. *Nimbus Boat Rental Corp, Christian Valdes and Elaine Leyva v. F/V Nirvana; a 2005, 105 ft. Rodman, her engines, boats, tackle, apparel, and furnishings, Hull Number DLZ138521512 in rem and Angel Garcel, individually & Jet Skis in Miami, Corp. in personam*, Case No. 1:22-cv-22645-KMM, United States District Court, Southern District of Florida, Miami Division (filed August 19, 2022). This complaint contains nearly identical allegations to that of the above.

c. *Christian Valdes and Elaine Leyva v. Angel Garcel*, Case No. 2023-026451-CA-01, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (filed November 14, 2023), in which the Plaintiffs alleged in relevant part:



PD.56477715.1

i. In November of 2021, Plaintiffs and Garcel entered into a business partnership agreement to create a company that would purchase a yacht and then offer yacht charter rental services. *See* Plaintiff's Complaint, Filing #186105175 at ¶ 15.

ii. In January of 2022, Plaintiffs and Garcel continued their partnership agreement by further entering into an implied contract with each other whereby the Plaintiffs and Garcel would split the cost of the purchase of a vessel with the vessel being used for yacht charters in Maimi, Florida *Id.* at ¶ 18.

iii. Plaintiffs and Garcel agreed to purchase Nirvana for $629,500.00. *Id.* at ¶ 25.

iv. Plaintiffs gave $50,000.00 as a purchase deposit towards the purchase of Nirvana. *Id.* at ¶ 27.

v. Garcel never made his share of the yacht purchase deposit. *Id.* at ¶ 31.

vi. Garcel promised Plaintiffs that if Plaintiffs paid the full balance of the yacht purchase, Garcel would give the Plaintiffs the physical title to hold until Garcel had paid his share of the yacht purchase price. *Id.* at ¶ 38.

vii. In total, Plaintiffs paid $629,500.00 for the purchase of Nirvana. *Id.* at ¶ 40.

viii. On or about January 31, 2022, Garcel represented to the State of Florida that the price paid for the yacht was $200,000.00 even though Garcel was aware the price paid for the yacht was $629,500.00. *Id.* at ¶ 49.

ix. On August 25, 2024, Plaintiffs set Garcel and Jet Skis a Pre-Suit Civil Theft Demand for $629,500.00. *Id.* at ¶ 93,94.

29. Through its investigation, ION learned that Garcel further omitted alleged criminal actions taken against him potentially related to the ownership dispute, including being shot on December 13, 2024 and the fire that caused the Underlying Claim.

a. Specifically, in the state action, Case No. 2023-026451-CA-01, Garcel's counsel filed an Objection to Plaintiff's Notice of Intention to Serve Subpoena Pursuant to Rule 1.351 stating: "On the evening of December 13, 2024, Mr. Garcel was shot in the head at point-blank…[and]…[o]n April, 2025, just four months after this attempted murder, two masked men sneaked [sic.] into the marina where Mr. Garcel kept the yacht subject to this litigation and set it on fire, along with another yacht Mr. Garcel used for his chartering business…This was not an incident – it was a carefully planned attack to destroy Mr. Garcel's business…" *See* Filing #221959300.

**COUNT I – DECLARATORY JUDGMENT**
**RESCISSION OF THE POLICIES**

30. ION adopts and incorporates by reference all allegations set forth in paragraphs 1 through 26 above as though completely and fully set forth herein.

31. There is an actual, present, and existing controversy among the parties to this action whether the Policies exist or are void *ab initio.*

32. ION seeks a declaratory judgment that it may rescind the Policies due to Garcel's material misrepresentations and omissions in the aforementioned underwriting documents.

33. Based on the material misrepresentations and omissions made by Garcel in the aforementioned underwriting documents, ION issued the Policies to Garcel.

34. In the 2024 Proposal, 2024 Declaration, 2024 Named Operator Resume, 2024 Fraud Statement, 2025 Named Operator Resume, and 2025 Fraud Statement, Garcel represented he had no previous charges, convictions, or offenses against him which might affect the risk being insured by ION, he was the sole owner of the Vessel, and the Vessel was not subject to any financial agreements.

35. These representations provided by Garcel were material, false, and constituted misrepresentations and/or omissions regarding the risk insured and the ownership of the Vessel.

36. In addition to these misrepresentations and/or omissions, Garcel failed to disclose pending litigation filed against him prior to his submission of the underwriting documents for the 2024 Policy regarding the ownership of the Vessel and potential criminal offenses carried out against him related to the ownership dispute over the Vessel he was asking ION to continue to insure under the 2025 Renewal Policy, including being shot on December 13, 2024 and the fire which caused the Underlying Claim. *See Christian Valdes and Elaine Leyva v. Angel Garcel*, Case No. 2023-026451-CA-01, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida; *See Nimbus Boat Rental Corp, Christian Valdes and Elaine Leyva v. F/V Nirvana; a 2005, 105 ft. Rodman, her engines, boats, tackle, apparel, and furnishings, Hull Number DLZ138521512 in rem and Angel Garcel, individually & Jet Skis in Miami, Corp. in personam*, Case No. 1:22-cv-22645-KMM, United States District Court, Southern District of Florida, Miami Division ("Litigation Against Garcel").

37. Garcel also misrepresented the purchase price of the Vessel in his application documents for the Policies.

38. Through its investigation, ION learned since at least the summer of 2022, Garcel has contested with the parties in the Litigation Against Garcel over ownership of the Vessel, rising to violent levels. None of the facts surrounding this alleged violent dispute were disclosed to ION.

39. Upon learning of the misrepresentations and/or omissions of material fact by Garcel, ION issued a coverage position letter informing Garcel the Policies were rescinded *ab initio* and declining coverage.

40. On October 10, 2025, ION returned all premiums in full to Garcel's legal counsel, which were previously paid by Garcel, or on his behalf, for the Policies.

41. If the true facts had been known to ION, ION would not have issued the Policies extending coverage for the Vessel to Garcel.

42. The Eleventh Circuit explicitly holds *uberrimae fidei* to be the law of the circuit, which voids the policy *ab initio* in situations such as this. *See generally Quintero v. Geico Marine Ins. Co*., 983 F.3d 1264, 1279 (11th Cir. 2020); *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1303 (11th Cir. 2025); *HIH Marine Servs., Kins. V. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000).

43. Therefore, ION is entitled to rescind the Policies due to Garcel's misrepresentations and/or omissions of material facts in the application and underwriting documents.

44. ION respectfully requests that the Court enter a declaratory judgment that ION is entitled to rescind the Policies for materials misrepresentations and/or omissions made by Garcel in the underwriting process and thus, there is no coverage for the Underlying Claim or any related claim by Sea Tow for its invoices submitted to ION.

**COUNT II – DECLARATORY JUDGMENT**
**SALVAGE VALUE**

45. ION adopts and incorporates by reference all allegations set forth in paragraphs 1 through 26 above as though completely and fully set forth herein.

46. There is an actual, present, and existing controversy among the parties to this action whether the Policies exist or are void *ab initio.*

47. In the event this Court declares the Policies are not void, the 2025 Renewal Policy's Yacht Clauses, Section 1 – Accidental Loss or Damage to Your Vessel, paragraph 1.4 states:

> **1.4** **Salvage** charges and wreck removal of the **vessel** only will be covered if selected on the proposal form and shown as an endorsement on your **policy schedule.** Coverage will be to a maximum of 10% of the **hull sum insured** (or US $30,000.00 whichever is greater) with a **deductible** on any **salvage** claim of 10% of the **salvage** amount. If your **vessel** is damaged or sinks accidentally, we agree to recover it or the law requires that it must be removed, then we will pay the reasonable costs of the **salvage** charges incurred for the removal/recovery of the wreck up to the amount requested and specified on your **policy schedule**. This cost will be paid in addition to the **sum insured** for your **vessel** noted on your policy schedule. In no event will we be liable for any costs of defending you or the **vessel** against any claims, actions, or liens by any provider of salvage, towage, or removal of wreck services.

*See* Ex. 1, Yacht Clauses, pg. 8.

48. Under the 2025 Renewal Policy's Yacht Clauses, Section 8 – General Exclusions That Apply to The Whole Policy, paragraph 8.33 states, "You are not covered for any claim arising:"

> **8.33** From any **salvage** charges unless agreed with us and stated on the policy schedule. Coverage is to a maximum of 10% of the **hull/machinery sum insured** with a deductible of 10% of the **salvage** sum insured.

*See* Ex. 1, Yacht Clauses, pg. 20.

49. The 2025 Renewal Policy Yacht Clauses defines "salvage" as "those reasonable charges and expenses incurred for the removal/recovery of the vessel if damaged and/or sinks accidentally." *See* Ex. 1, Yacht Clauses, pg. 30.

50. The Hull & Machinery Value is US $980,000.00. *See* Ex. 1, Sums Insured. If the 2025 Renewal Policy is not void *ab initio,* the maximum amount for salvage covered under the

policy is 10% of the hull/machinery sum insured, which would be $98,000.00, subject to a $9,800.00 deductible, for a net of $88,200.00.

**WHEREFORE,** ION Insurance Company, Inc. respectfully requests that this Honorable Court enter a judgment declaring the rights and obligations of the parties under the Policies, including:

(a) ION is entitled to rescind the 2024 Policy;

(b) ION is entitled to rescind the 2025 Renewal Policy;

(c) The 2024 Policy and 2025 Renewal Policy are void *ab initio*; and

(d) Alternatively, if the 2025 Renewal Policy is not void, the maximum amount covered for salvage under the 2025 Renewal Policy is $88,200.00.

Dated: November 25, 2025.

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Patricia A. McLean*

Patricia A. McLean, Esq.
Fla. Bar No. 129143
mcleanp@phelps.com
Amber N. Kile, Esq.
Fla. Bar No. 1026019
amber.kile@phelps.com
Phelps Dunbar, LLP
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602-5311
Telephone: (813) 472-7550; Fax: (813) 472-7570
*Attorneys for Plaintiff, ION Insurance Company, Inc.*